IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLIE DAVIS and ) | |
| JOYCE DAVIS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO.: 2:12-cv-704-MEF |
| ) | (WO — Do Not Publish) |
| CARGILL INCORPORATED ) | |
| and RETAIL WHOLESALE ) | |
| DEPARTMENT STORE LOCAL ) | |
| 105, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on motions to dismiss filed by Defendant Retail, Wholesale & Department Store Union Local 105 ("Local 105") and Defendant Cargill, Inc. ("Cargill") (collectively, "Defendants") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. #11, 13). In their motions, both Defendants argue that Plaintiffs Charlie and Joyce Davis ("Plaintiffs" or the "Davises") have asserted state law claims that are preempted by § 301 of the Labor Management Relations Act ("LMRA") and the federal duty of fair representation and, therefore, are due to be dismissed. In addition, Defendants argue that if Plaintiffs' claims are not due to be dismissed based solely on preemption, and are instead treated by the Court as § 301/duty of fair representation claims, they are due to be dismissed as untimely and because of Plaintiffs' failure to exhaust administrative remedies. For the reasons stated herein, the Court finds that Defendants' motions are well-taken and due to be GRANTED.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Charlie Davis ("Mr. Davis") was employed by Cargill loading trucks at its Animal Nutrition facility in Montgomery, Alabama. Mr. Davis was an active, dues-paying member of Local 105 (a union) during his employment with Cargill. At all relevant times, Plaintiff Joyce Davis ("Ms. Davis") was legally married to Mr. Davis.[1]

During Mr. Davis's employment with Cargill, Local 105 and Cargill entered into a collective bargaining agreement (the "CBA"),[2] the purpose of which was to set the wages, terms, and conditions of employment for all production and maintenance employees and truck drivers employed at Cargill's Montgomery facility. The CBA was effective between

---

[1] Joyce and Charlie Davis remain married.

[2] When considering a Rule 12(b)(6) motion to dismiss, district courts generally do not look beyond the four corners of the complaint. However, a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document, or if the document is central to the allegations in the complaint, without having to convert the motion into one for summary judgment. *See Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317, 1323 (N.D. Ala. 2004). In *Dykes v. Southeastern Pennsylvania Transportation Authority*, the Third Circuit recognized that a court could consider a collective bargaining agreement attached to a defendant's motion to dismiss if the plaintiff's claims are based on that document. 68 F.3d 1564, 1567 n.3 (3rd Cir. 1995). In this case, the CBA was submitted by Defendants with their Notice of Removal and also as an exhibit to Cargill's motion to dismiss. Plaintiffs did not object to this submission or otherwise dispute the CBA's authenticity in either instance; thus, it is part of the record in this case. More importantly, although Plaintiffs do not specifically reference the CBA in their Amended Complaint or attach it as an exhibit, they do repeatedly refer to "union guidelines" and further allege that Mr. Davis "entered in an agreement with defendants, as an employee of defendant Cargill and a member of defendant [Local 105]" and that he paid "membership dues in exchange for privileges." (Doc. #1-2.) In their opposition, Plaintiffs also repeatedly refer to the CBA. As such, and for the reasons discussed in greater detail herein, the Court finds that the CBA is central to the allegations in Plaintiffs' Amended Complaint, and therefore, it can, and will be, considered by the Court when resolving Defendants' Rule 12(b)(6) motions. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (recognizing that a court may consider documents "upon which the plaintiff's complaint necessarily relies").

August 1, 2009, and July 31, 2011. Under the CBA, Local 105 is the exclusive bargaining representative for covered employees. However, Cargill was vested with the sole and exclusive right under the CBA to manage its business, direct its workforce, and maintain rules and regulations governing the operations of the Montgomery plant and the conduct of its employees. This meant that, subject to the specific terms of the CBA, Cargill had the exclusive right to manage the Montgomery plant and its business, including the right to suspend, discipline, or discharge an employee for "just cause"; to maintain quality and efficient operations; to terminate employees from duty for legitimate reasons; and to establish, change, or abolish policies, practices, procedures, regulations, and rules for conducting its business.

The CBA includes a grievance and arbitration procedure for the resolution of complaints made by any employee-member of Local 105 "who feels aggrieved." (Doc. #13-1.) The grievance and arbitration procedure is the "exclusive forum" for a covered employee. (Doc. #13-1.) Further, in signing the CBA, Local 105 waived, on behalf of all covered employees, "all state law claims and rights, relating to or arising out of discharge from employment, including claims which are not preempted by federal law or which are independent of the collective bargaining agreement." (Doc. #13-1.)

On March 17, 2010, Mr. Davis was asked to work overtime by his supervisor. Mr. Davis went to the warehouse office to pick up the paperwork to begin loading trucks. Until he received this paperwork, Mr. Davis did not have any knowledge of which truck he would be assigned to load, what product he would be loading, or which driver would be picking up

the load.

Mr. Davis was unable to completely load his assigned truck with all of the product listed on his paperwork because some of the product was not yet available for loading. Mr. Davis recorded the shortages on the "board" in accordance with company procedure and left for the day. Plaintiffs allege that, after Mr. Davis left, unknown Cargill employees placed additional products onto the same truck that Mr. Davis had already partially loaded.

Some time after Mr. Davis left work on March 17, 2010, he met with Willie Barber to show him a motor that was available for sale. Mr. Davis alleges that, at an unspecified date and time, Cargill filed an affidavit and had him taken into custody by the Montgomery County Sheriff's Department. (Doc. #1-2, ¶ 11, Count IV, ¶ 4.) Mr. Davis further alleges that, at an unspecified date and time, Cargill "signed a warrant alleging that [Mr. Davis] had stolen product from the defendant's place of business earlier that day by loading extra product on the truck driven by Willie Barber." (Doc. #1-2, ¶ 12, Count IV, ¶ 3.) Mr. Davis was subsequently indicted for Theft of Property 2nd degree in the Circuit Court of Montgomery County, Alabama. On April 9, 2011, Mr. Davis was found not guilty and acquitted of that charge.

Plaintiffs never allege in the Amended Complaint that Mr. Davis attempted to or actually submitted a grievance through Local 105 following these events. Nor do Plaintiffs specifically allege that Mr. Davis was terminated from his employment with Cargill following these events. Plaintiffs only allege that they are seeking damages in the form of "lost wages." (Doc. #1-2, Count IV, ¶ 7, Count V, ¶ 7.) Finally, Plaintiffs do not allege in

the Amended Complaint that Local 105's conduct was discriminatory, arbitrary, or done in bad faith.

On July 12, 2012, Plaintiffs filed an Amended Complaint against Cargill and Local 105 in the Circuit Court of Montgomery County, Alabama.[3] (Doc. #1-2.) In their Amended Complaint, Plaintiffs assert claims against both Cargill and Local 105 for negligence (Count I), wantonness (Count II), loss of consortium (Count III), and breach of contract (Count VI). Plaintiffs also assert claims of malicious prosecution (Count IV) and defamation (Count V) against Cargill. (Doc. #1-2.) On August 15, 2012, Defendants timely removed Plaintiffs' state court action to this Court[4] on the grounds that removal was "proper because all of Plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act . . ., 29 U.S.C. § 185, which governs claims based on rights created by collective bargaining agreements and claims that are substantially dependent on the analysis of such agreements." (Doc. #1.) A copy of the CBA was filed with Defendants' removal

---

[3] Plaintiffs filed their original Complaint against Cargill and Local 105 on March 18, 2012. (Doc. #1-1.)

[4] Cargill was served with the Amended Complaint on July 17, 2010. (Doc. #13.) However, it does not appear that Local 105 was ever served with the Amended Complaint (or, for that matter, the original Complaint). (Doc. #13.) Despite lack of service, Local 105 elected to join in Cargill's Notice of Removal. (Doc. #1.) Removal, however, does not waive any defense. *See Ditkof v. Owens-Illinois, Inc.*, 114 F.R.D. 104, 105 (E.D. Mich. 1987) (citing 14 A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3738, at 561-562 (1985) ("Defendant . . . waives nothing by removing the case and may move to dismiss – for lack of personal jurisdiction, for example – after removal.")). Therefore, if any of Plaintiffs' claims had survived Defendants' Rule 12(b)()6 motions, the fact that Local 105 joined with Cargill in removal would not have alleviated Plaintiffs from their obligation to formally serve Local 105 with the Amended Complaint in accordance with the applicable rules of civil procedure.

papers.  (Doc. #1-4.)  Plaintiffs never moved for remand or otherwise objected to Defendants' notice of removal or this Court's exercise of subject matter jurisdiction.

Defendants have now filed separate Rule 12(b)(6) motions to dismiss based on § 301/duty of fair representation preemption as well as untimeliness and failure to exhaust administrative remedies.  Defendants seek dismissal of Plaintiffs' claims in their entirety. Plaintiffs oppose Defendants' motions but not on preemption grounds.  Indeed, Plaintiffs only briefly discuss preemption in their opposition and, for all practical purposes, concede that their claims are preempted by federal law.  Plaintiffs also do not address the alleged untimeliness of their claims or otherwise make any arguments as to why their claims, as currently plead, should survive Rule 12(b)(6).  Rather, Plaintiffs rely on the exhaustion doctrine, arguing that, as a matter of law and policy, they were not required to, or they should be excused from, having to comply with administrative prerequisites. (Doc. #18.) The Court will address these arguments below.

## STANDARD OF REVIEW

In assessing the merits of a Rule 12(b)(6) motion, the Court must assume that all the factual allegations set forth in the complaint are true and construe them in a light most favorable to Plaintiffs. *See Baloco v. Drummond Co., Inc.*, 640 F.3d 1338, 1344–45 (11th Cir. 2011).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."

*Bhd. of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "detailed factual allegations," but must include enough facts "to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. In addition to considering the properly pleaded allegations in a complaint, a court may also consider on a motion to dismiss any exhibits attached to the complaint, *see Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005), as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## DISCUSSION

A. **Preemption Under § 301 and the Federal Duty of Fair Representation**

1. **Section 301 of the LMRA**

Section 301 of the LMRA permits suits in federal court for violation of contracts between an employer and a labor organization representing employees. *See* 29 U.S.C. § 185(a). "This section grants jurisdiction to federal courts to adjudicate employment disputes involving collective bargaining agreements, and it embodies the policy that federal law, fashioned from national labor law, should provide the substantive law that applies in § 301(a) suits." *Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1338 (11th Cir. 2004). Section 301 has long been interpreted as having broad preemption powers over state-law contract actions. *Uniroyal Goodrich Tire Co. v. Riddle*, 853 F. Supp. 1371, 1372 (M.D. Ala. 1994). However, courts have also expanded the preemptive nature of § 301 to cover state-law tort actions. *Id.* Indeed, the Supreme Court has held that § 301 "'has such extraordinary preemptive force as to be an appropriate federal statute under which to find complete preemption.'" *Jordan v. Equity Group Eufala Div., LLC*, 648 F. Supp. 2d 1246, 1250 (M.D. Ala. 2009) (quoting *Allis-Chalmers v. Lueck*, 471 U.S. 202, 211 (1985)).

This is not to say, however, that "every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Bartholomew*, 361 F.3d at 1338. A state-law claim is preempted by § 301 only if it cannot exist "independently of an applicable labor contract." *Jordan*, 648 F. Supp. 2d at 1250 (citing *Allis-Chalmers*, 471 U.S. at 218; *Int'l Bhd. of Elec. Workers v. Hechler*, 481

U.S. 851, 859 (1987); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408–09 (1988); *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 370–71 (1990)). "If a state law claim 'can be resolved without interpreting the [labor] agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Rasheed v. Int'l Paper Co.*, 826 F. Supp. 1377, 1384 (S.D. Ala. 1993) (quoting *Lingle*, 486 U.S. at 399). "'To be 'independent' of the collective bargaining agreement, and thus not preempted, the resolution of a state law claim must turn on purely factual questions not touching upon the terms of the collective bargaining agreement.'" *Id.* (quoting *Chube v. Exxon Chem. Americas*, 760 F. Supp. 557, 560 (M.D. La. 1991)). "Where neither the elements of the state cause of action nor the defenses to it would entail any interpretation or analysis of the collective bargaining agreement, preemption does not apply." *Id.*

### 2. The Duty of Fair Representation

The duty of fair representation is a product of federal labor law that serves as a corollary to § 301. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967). The duty of fair representation places upon a union the "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id*. Thus, a breach of this duty occurs when the union acts in a manner that is arbitrary, discriminatory, or done in bad faith. *Id.* at 190. Like with § 301, state law claims alleging conduct within the union's duty of fair representation are subsumed by this duty and, therefore, are preempted. *See BIW Deceived v. Local S6*, 132 F.3d 824, 830 (1st Cir. 1997).

### 3. Hybrid § 301/Duty of Fair Representation Claims

When a plaintiff asserts claims that an employer breached its obligations under an employment agreement and that the union violated its duty of fair representation, this is considered a "hybrid § 301/fair representation claim." *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 165 (1983). In a hybrid action, claims against the employer are pursued under § 301, while claims against the union are pursued under the duty of fair representation. *Id.* Although the two claims are similar, courts have recognized that they "'are inextricably interdependent.'" *Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1204 (11th Cir. 2002) (quoting *DelCostello*, 462 U.S. at 164). As a result, in a hybrid § 301/duty of fair representation action, an employee cannot prevail against the employer unless he can show that the union also violated its duty of fair representation. *See Davis v. Asti Inc.*, 180 F. Supp. 2d 1314, 1318 (11th Cir. 2001).

### B.   Application to Plaintiffs' Claims

The crux of Defendants' arguments for dismissal is simple – Plaintiffs' claims, as currently plead, are preempted by federal law, specifically § 301 of the LMRA and the federal duty of fair representation, and therefore, are due to be dismissed. However, if Plaintiffs' claims are not due to be dismissed based on preemption alone, then they are due to be dismissed as untimely and because Plaintiffs failed to exhaust their administrative remedies.

Plaintiffs make no effective argument in response to Defendants' preemption claims. In fact, Plaintiffs effectively concede preemption in their opposition, stating: "Plaintiffs' [sic]

10

seeks [sic] 'judicial enforcement of his contractual rights' . . . upon the claim that Cargill, Inc. and [Local 105's] breach of duty frustrated the administrative remedies procedure under the *collective agreement*." (Doc. #18, p. 3) (emphasis added). Plaintiffs further concede that their claim "*does not deal with purely private contract rights and it is based upon a statutorily declared public right to obtain, and public duty to afford, fair representation to a member of the bargaining unit*." (Doc. #18, p. 4) (emphasis added). Finally, Plaintiffs recognize in their opposition that it is their burden to *"prove to a court that [Local 105] breached its duty of fair representation and that Cargill, Inc. breached the collective agreement*," and they spend the entirety of their opposition arguing that they should be excused from the exhaustion requirements applicable to § 301/duty of fair representation claims. (Doc. #18, p. 6) (emphasis added). In sum, the totality of these arguments and statements in Plaintiffs' opposition are viewed by the Court as a concession that Plaintiffs' state law claims against Defendants are preempted by federal labor law.

Yet this does not end the Court's analysis. The removal of Plaintiffs' state court action, and thus this Court's subject matter jurisdiction, is based on § 301/duty of fair representation preemption (*i.e.*, a federal question).[5] (Doc. #1.) Indeed, in their Notice of Removal, Defendants allege "[r]emoval of this case is proper because all of Plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act." (Doc. #1.) However, "[i]t is well-settled that parties cannot create subject matter jurisdiction by

---

[5] There is no diversity in this case, as Plaintiffs and Local 105 are both citizens of Alabama and the requisite amount in controversy has not been met. (Doc. #1-2.)

agreement" or concession. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1222 (11th Cir. 1999). Thus, the Court's finding that Plaintiffs have conceded preemption of their state law claims under § 301/duty of fair representation is of little consequence to its ability to exercise subject matter jurisdiction. The Court must instead have an independent basis on which to exercise subject matter jurisdiction, which, given the basis for Defendants' removal, must be § 301/duty of fair representation preemption. *See United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction.").

Accordingly, using the legal framework discussed above, the Court must determine whether any of Plaintiffs' state law claims are indeed preempted by § 301 of the LMRA or the federal duty of fair representation and, consequently, whether it can exercise federal subject matter jurisdiction in this action.

### 1.     **Breach of Contract Claim**

Plaintiffs' breach of contract claim resolves any issue as to this Court's ability to exercise subject matter jurisdiction in this action. In Count VI of the Amended Complaint, Plaintiffs allege: (1) that Mr. Davis "entered in an agreement with defendants, as an employer of defendant Cargill and a member of defendant [Local 105]"; (2) that in consideration of promises made by Cargill and Local 105, "plaintiff on his part agreed to perform all duties in accordance with defendant Cargill's policy" and "to pay membership dues in exchange for privileges in accordance with defendant [Local 105's] policy"; and (3) that Defendants failed or refused to perform their contractual duties "in that both defendants did not adhere

to clearly established policy as it relates to the events which form the basis of this complaint." (Doc. #1-2, Count VI, ¶¶ 2-6.)

As discussed above, Plaintiffs do not dispute that their breach of contract claim against Defendants is preempted by § 301 and the duty of fair representation in that they are seeking "judicial enforcement of . . . contractual rights . . . under the collective agreement." (Doc. #18) ("Plaintiffs' claim does not deal with purely private contract rights and it is based upon a statutorily declared public right to obtain, and public duty to afford, fair representation to a member of the bargaining unit."). More importantly, even though Plaintiffs' breach of contract claim is plead in state law terms, the substance of this claim implicates the duties and obligations owed by Cargill and Local 105 to Mr. Davis as his employer and union, respectively, under a "collective agreement." Thus, there is no doubt that the resolution of this claim will necessarily involve the interpretation of the CBA. *See Bartholomew*, 361 F.3d at 1339. As such, Plaintiffs' breach of contract claim is preempted, and this Court has a sufficient independent basis on which to exercise federal question subject matter jurisdiction in this matter.

### 2. Tort Claims

Plaintiffs' tort claims against Defendants are likewise preempted by § 301 and the duty of fair representation. Plaintiffs assert claims for negligence and wantonness against both Cargill and Local 105. (Doc. #1-2, Counts I & II.) In their negligence claim, Plaintiffs allege that Cargill breached its duty by claiming "that the plaintiff stole defendant's property

13

without any evidence of wrongdoing by plaintiff," and that Local 105 breached its duty "to follow union guidelines and provide with [sic] the protection afforded to a union member." (Doc. #1-2, Count I.) In their wantonness claim, Plaintiffs allege that Cargill engaged in conduct "with a reckless and conscious disregard of the rights of plaintiff" by reporting the findings of an "incomplete investigation" to the Montgomery County Sheriff's Office, resulting in Mr. Davis's arrest, and that Local 105 showed a "reckless and conscious disregard of the rights of plaintiff" when it failed "to intervene on behalf of the plaintiff despite having knowledge of the employer's conduct." (Doc. #1-2, Count III.) As with their breach of contract claim, the duties implicated by Plaintiffs' negligence and wantonness claims arise from Cargill's management rights and duties under the CBA and Local 105's representation duties under the CBA. Resolution of these claims will necessarily require an interpretation and application of the CBA, making them preempted under federal law.

Plaintiffs' malicious prosecution and defamation claims against Cargill are likewise preempted. (Doc. #1-2, Counts IV & V.) These claims are based on Cargill providing an affidavit to law enforcement containing information from its investigation that Mr. Davis was involved in the theft and for subsequently having him arrested. Plaintiffs further allege that Cargill should have known, based on its investigation, that Mr. Davis was not involved in the theft and that the affidavit was false. Plaintiffs do not meaningfully challenge preemption of these claims under § 301 and the duty of fair representation. Moreover, while alleged in state law terms, the substance of these claims is rooted in whether and to what extent Cargill owed a duty to investigate the theft and to follow certain policies, procedures, or practices

14

before giving information and publishing statements in an affidavit to law enforcement about Mr. Davis. Because these issues are inextricably intertwined with Cargill's management rights and responsibilities under the CBA, their resolution is substantially dependent upon an interpretation and application of its terms. *See Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir. 1988); *United Food and Comm. Workers Int'l Union v. Albertsons, Inc.*, No. C06-813JLR, 2006 WL 2883000, at *1 (Wash. Oct. 10, 2006). Therefore, these claims are preempted under federal law.

Finally, Plaintiffs have alleged a loss of consortium claim against both Defendants. (Doc. #1-2, Count III.) This claim, which belongs to Ms. Davis, is derivative of Mr. Davis's preempted claims against Defendants; thus, Plaintiffs' loss of consortium claim is likewise preempted. *See Ryan v. Int'l Union of Operating Eng'rs, Local 675*, 794 F.2d 641, 643–44 (11th Cir. 1986).

### 3. Untimeliness

If a court determines that a plaintiff's state law claims are preempted by § 301 or the duty of fair representation, it may either dismiss those claims outright or treat them as federal claims. *See Allis-Chalmers*, 471 U.S. at 220; *see also Moon v. Goodyear Tire & Rubber Co.*, No. 4:12-cv-0065-KOB, 2012 WL 4479249, at *4–5 (N.D. Ala. Sept. 25, 2012). In this instance, rather than dismiss Plaintiffs' preempted claims outright, the Court will treat them as federal claims so that it may address the merits of the timeliness issues raised in Defendants' motions.

"Where an employee sues the employer for breach of the collective bargaining

agreement and the union for breach of the union's duty of fair representation, the claims are known as hybrid § 301/duty of fair representation claims." *Shanks v. Potter*, 451 Fed. App'x 815, 817 (11th Cir. 2011) (citing *DelCostello*, 462 U.S. at 164–165). In this case, Plaintiffs have sued both Mr. Davis's former employer, Cargill, and his former union, Local 105, for breach of their obligations and duties under the collective bargaining agreement. (Doc. #1-2.) Thus, Plaintiffs' preempted state law claims will be treated as hybrid § 301/duty of fair representation claims.

"There is a six-month statute of limitations for hybrid § 301/fair representation claims." *Shanks*, 451 Fed. App'x at 817 (citing *DelCostello*, 462 U.S. at 169–71; *Bartholomew*, 361 F.3d at 1342). The limitations period for a hybrid § 301/duty of fair representation suit begins to run "when an employee knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the . . . alleged violations." *See Lucas v. Mountain States Tele. & Telegraph*, 909 F.2d 419, 421 (10th Cir. 1990); *Taylor v. Ford Motor Co.*, 761 F.2d 931, 934 (3rd Cir. 1985) ("[H]ybrid section 301 action accrues . . . when the union unequivocally refuses to assist [employee.]"). Plaintiffs' claims in the Amended Complaint are based on Defendants' actions in connection with events that transpired on March 17, 2010, when Cargill and Local 105 allegedly breached the duties it owed to Mr. Davis under the CBA by having him arrested for theft and failing to conduct a thorough investigation before doing so. (Doc. #1-2.) Thus, Plaintiffs knew or should have known of Defendants' alleged violations of the CBA on March 17, 2010, at the earliest, or at the very latest, by April 9, 2010, the date on which Mr. Davis was tried in state court and

16

acquitted of the theft charges.  Because Plaintiffs did not file their original Complaint until July 12, 2012, more than six months after either of these dates, their hybrid claims are untimely and are due to be dismissed as a matter of law.[6]

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.      Defendant Retail, Wholesale & Department Store Union Local 105's Motion to Dismiss (Doc. #11) is GRANTED, and Plaintiffs' claims against it are DISMISSED with prejudice.

2.      Defendant Cargill, Inc.'s Motion to Dismiss (Doc. #13) is GRANTED, and Plaintiffs' claims against it are DISMISSED with prejudice.

An appropriate final judgment will be entered separately.

DONE this the 28th day of March, 2013.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE

---

[6] Although the vast majority of Plaintiffs' opposition is focused on their being excused from the exhaustion requirements of § 301, which generally precludes litigation of § 301 claims if an employee does not first exhaust administrative remedies, it is unnecessary for the Court to address the merits of the parties' exhaustion arguments given the untimeliness of Plaintiffs' claims.  *See Vaca*, 386 U.S. at 171; *Rep. Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965).